[No. 11. Second Appellate District.—July 20, 1905.]

## D. H. THOMAS, and H. A. FARRAR, Respondents, v. BOLSA LAND COMPANY, and BOLSA CHICA GUN CLUB, Corporations, Appellants.

FLOODING OF LAND—DESTRUCTION OF CROPS—INTERFERENCE WITH DRAINAGE SYSTEM—LIABILITY OF RIPARIAN OWNERS.—Where an owner of land, by an established system of drainage to the ocean, has rendered his land tillable, riparian owners who, by the subsequent erection of dams, have interfered with such drainage system, and caused back-water to rise on such land, to the destruction of crops growing thereon, are liable for the resulting damage.

ID.—ACTION FOR DAMAGES—JOINDER OF PLAINTIFFS—LAND TILLED UPON SHARES.—The owner of the land and one who is engaged in tilling it upon shares, each being interested in the crop destroyed, were properly joined as co-plaintiffs in the action for damages therefor.

APPEAL from a judgment of the Superior Court of Orange County and from an order denying a new trial. J. W. Ballard, Judge.

The facts are stated in the opinion of the court.

Scarborough & Forgy, and Dunn & Crutcher, for Appellants.

F. O. Daniel, and Victor Montgomery, for Respondents.

GRAY, P. J.—This action is brought to recover damages suffered by reason of a dam constructed by defendants, which had the effect to back up and cause certain waters to sub-irrigate and injure and destroy the celery crop of plaintiffs. On a trial without a jury the plaintiffs had judgment for

$982 and costs. The defendants appeal from the judgment, and from an order denying them a new trial.

The plaintiff Thomas owns a certain forty acres of land in Orange County, upon which the plaintiffs, under an agreement between them for cropping the land on shares, had growing some eleven acres of celery. The story of injuries complained of is aptly told in the findings of the court, the important parts of which are as follows:—

"That the said land is situated about two miles from and above the dam described in said complaint and therein alleged to have been built by the Bolsa Land Company. That said land of the plaintiff Thomas was, as early as the year 1892, to some extent drained by the construction of ditches along and through it, and prior to the construction of said dam had been drained to such an extent as to render it tillable and susceptible of raising, and had raised, good crops of celery and other farm products. That prior to the building of said dam the ditches used in the drainage of the lands of the plaintiffs and other lands contiguous thereto emptied into a natural stream known as Freeman's River, and from thence into Bolsa Chica Bay, and from said bay through a natural channel and outlet into the Pacific Ocean.

"That prior to the 1st day of October, 1899, the plaintiff D. H. Thomas had expended money in draining said land, and in preparing for, and in reducing the same to cultivation, and in cultivating said land, and in digging and keeping open ditches for the purpose of draining said land into said Bolsa Chica Bay, and had, prior to the building of said dam, drained said land and kept the water off and from under the same by running said water into Bolsa Chica Bay, from which bay it flowed out into the Pacific Ocean by a natural channel, carrying away the surplus water from said lands, by means of said ditches, river and bay and natural channel into the Pacific Ocean.

"That during the year 1899 the plaintiffs planted the land described in the complaint as belonging to the plaintiff Thomas with celery and other crops; that eleven acres of said land were planted with celery, and that plaintiffs were the owners of said crop of celery. That before said celery was planted the land was properly prepared and put in a fit state of cultivation for the planting of celery, and said land was

cultivated in the usual and customary way. That the said
crop of celery was growing and maturing up to about the 15th
day of December, 1899, and was then worth in the field the
sum of eleven hundred dollars, and was worth said sum when
it was damaged and destroyed, as herein stated, and had it
not been for the building of said dam and the consequent
backing of the water in said bay and ditches said celery could
have been sold at the time in the field and at harvest time
for the sum of eleven hundred dollars.

"That said dam was constructed by the defendants at and
in said Bolsa Chica Bay and at the place alleged in said com-
plaint, and was an obstruction in and to the channel of said
bay, and prevented the water of said bay from flowing
through the natural channel and outlet, and out of the bay
into the Pacific Ocean, and as maintained by the defendants
the waters of the bay were dammed up and rose in said bay
and in said ditches and filled up the drainage ditches and
prevented the waters from said ditches and from the land of
the plaintiffs from flowing away from said land into the
Pacific Ocean, and caused said land to become subirrigated
and the celery to become wet, damaged, decayed and de-
stroyed, and to become unfit for market and unsalable, and
the said crop of celery was lost to the plaintiffs, except a
small portion thereof, which was sold for the sum of one hun-
dred and eighteen dollars, which was all of said crop that
could be sold, and was all that could be realized therefor.

"That about the 1st day of November, 1899, and after said
crop of celery had been planted, and while it was growing on
the lands of the plaintiffs, the said defendants built, erected,
and maintained in and across said Bolsa Chica Bay, and
across the channel thereof running into the Pacific Ocean, a
dam extending above the high tide of the said ocean which
was maintained and kept above the high tide up to the month
of March, 1900.

"That for more than two years next prior to the building
of said dam the land of the plaintiff Thomas had been culti-
vated and planted with celery, and good celery crops had
been grown thereon, and were matured and harvested, and
said crops kept in good condition and were fit for market,
and were marketed, and sold for from one hundred to one
hundred and twenty-five dollars per acre in the field.

I Cal. App.—22

"That the ditches constructed for the purpose of draining the land of the plaintiff Thomas had not been used continuously and adversely for the period of five years before the commencement of this action."

The first and main contention of appellants is that "plaintiffs showed no right to maintain their ditches and to drain water into the Freeman River and the bay through their ditches, and hence cannot complain of the obstruction to the flow of water therein."

In considering this question, it may be well to notice in the beginning that this is not an action in equity to restrain defendants from maintaining their dam. It is an action to recover only for an actual loss and injury to property suffered by plaintiffs because of this dam. The property injured consisted of a growing and nearly matured crop of celery. The soil upon which this celery was maturing had been cultivated, drained, and made fit for the growth of the crop at a time anterior to the construction of the dam, and the celery had been planted and was rapidly maturing at the time the dam was built. There is nothing to show that plaintiffs were not in every respect acting strictly within their rights at every step they took in the draining and further preparation of this land, as well as in planting and bringing into existence the property destroyed by the subsequent acts of defendants. So far as the drainage ditches are concerned, the map in evidence shows that the river and Bolsa Chica Bay were the natural conduits of the drainage from this land, and that if the land was drained at all it must have been by ditches, either into the river or into the bay direct, or into some other slough or stream connecting with the bay, and of necessity the dam would have affected disastrously any system of drainage that the plaintiffs could have reasonably adopted. The plaintiffs were in possession of a drainage system to the river. No part of this system was upon the lands of defendants, and it connected with a natural water course. From this possession a presumption of title and right of possession arises. It cannot be said that the use of this drainage system invaded any right of the defendants—at least, not up to the time of the construction of the dam.

Now, then, the question is: After this crop of celery had been by plaintiffs' efforts brought into existence, presumably

without invading the rights of any other person, are the defendants entitled by reason of being riparian owners on the river and bay to so use the waters of the same as to destroy property which has been brought into existence as above indicated? There is a principle in law which finds expression in section 3514 of the Civil Code as follows: "One must so use his own rights as not to infringe upon the rights of another." This principle has often been applied so as to restrain a lower riparian owner from damming up the stream in such a manner as to back the water upon the lands of an upper owner on the stream to the injury of the land of the latter and the destruction of his crops growing thereon. The same rule has sometimes been applied to injuries arising on lands not riparian to the stream, but which found a convenient and natural outlet for the drainage of such lands when aided by artificial ditches. (*Krause* v. *Oregon Iron and Steel Co.,* (Or.) 77 Pac. 833.) This case was recently decided by the supreme court of Oregon. The plaintiff in it was the owner of a tract of twenty-five acres of land *near* the Tualitin River, which he alleges was drained by it and Rock Creek, a small tributary thereto; and that by reason of the obstruction caused by defendant's dam the water was cast upon his land and the drainage so impeded and retarded as to hinder and delay him in planting his crops until too late in the season for them to mature properly. This land was once of a swampy character, but had been redeemed by drainage, and was very valuable for gardening and farming purposes. The court held that plaintiff was entitled to an injunction restricting the dam to a height that would not result in injury to plaintiff's land. In the opinion it is said: "The defendant owes to the plaintiff and other landowners whose crops are dependent upon the proper drainage of the soil in which they are produced a duty to see that it does not trespass upon their prior-acquired rights and privileges; and it can proceed with its obstruction of the stream just so far only as not to impinge upon these rights and privileges." No question of the statute of limitations is discussed, or even mentioned, but the opinion proceeds upon the theory that the plaintiff having devoted this stream to drainage purposes before the construction of the dam, therefore the dam should be so regulated as not to interfere with such drainage.

If a person can be restricted in the use of his dam in the manner indicated in the above case, it is clear that damages ought to be given plaintiffs herein under the circumstances disclosed by the quoted findings.

We are of opinion that defendants had not the right to back up or retard the waters of the bay and stream to the injury and destruction of the crops of the plaintiffs. The principle governing the case is analogous to that which gives to the owner of land an easement in the lower lands adjoining for the discharge of rain and surface water falling upon his own land. The owner of the lower lands is liable in damages if he dams up and backs and holds the water upon the higher lands. So here the defendants are liable for not permitting the waters to proceed on their way to the ocean, and for interfering with the established drainage system of plaintiffs.

The language of the findings will not admit of any other reasonable construction than that the crop was injured and destroyed by the act of the defendants in damming up and preventing the water from flowing away.

The findings of the court find ample support in the evidence. It would serve no useful purpose to attempt to state or analyze the evidence here. The contract between the plaintiffs was for cropping the land on shares, and each of them owned an interest in the growing crop, and there was no misjoinder of parties plaintiff.

Other objections are urged by appellants, but after a careful examination of them we are of opinion that they are not of sufficient importance to warrant further discussion.

Judgment and order are affirmed.

Smith, J., and Allen, J., concur.